IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUN RIVER ENERGY, INC., | § | |
| | § | |
| Plaintiff-Counterclaim-Defendant, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-01132-K |
| | § | |
| MIRADOR CONSULTING, INC. AND | § | |
| SECURITIES TRANSFER CORPORATION, | § | |
| | § | |
| Defendants-Counterclaimants, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRY McMILLAN AND CICERONE | § | |
| CORPORATE DEVELOPMENT, LLC, | § | |
| | § | |
| Defendants on Counterclaim. | § | |

## MIRADOR CONSULTING, INC.'S COUNTERCLAIM AND AMENDED ANSWER TO PLAINTIFF'S AMENDED ORIGINAL PETITION AND REQUEST FOR INJUNCTIVE RELIEF

Defendant Mirador Consulting, Inc. ("Mirador") files this Counterclaim and Amended Answer to Plaintiff's Amended Original Petition and Request for Injunctive Relief against Sun River Energy, Inc. ("Sun River" or "Company") and against Harry McMillan ("McMillan") and Cicerone Corporate Development, LLC ("Cicerone") as defendants on the counterclaim, stating as follows:

## PARTIES

1.      Mirador is a corporation organized under the laws of the State of Florida with its principal place of business located at 5499 N. Federal Highway, Suite D, Boca Raton, FL 33487. Mirador is in the business of providing services for management consulting, business advisement, shareholder information and public relations.

2.      Sun River is a corporation organized under the laws of the State of Colorado, with its principal place of business located at 5950 Berkshire Lane, Suite 1650, Dallas, Texas 75225. Common stock of Sun River Corp. at all relevant times herein was quoted on the OTC Bulletin Board, currently under the symbol "SNRV."

3.      Harry McMillan, at all relevant times, was upon information and belief the Managing Member of Cicerone Corporate Development LLC but is not disclosed as a control person of Sun River.  McMillan is an individual residing in Texas.

4.      Cicerone Corporate Development, LLC ("Cicerone") is a limited liability company organized under the laws of the State of Texas, with its principal place of business located at 1224 N. Hwy 377, Suite 303, PMB 56, Roanoke, TX 76262.  On information and belief, no member of Cicerone is a citizen of the State of Florida.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1367(a) because the Counterclaim arises out of the same transaction and occurrence alleged in Sun River's Amended Petition and forms part of the same case or controversy within the meaning of Article III of the United States Constitution.

6.     The Court also has jurisdiction under 28 U.S.C. § 1331, as Mirador's Counterclaim requires the Court to resolve substantial questions of federal law, including the Securities Act of 1933, 15 U.S.C. § 77a et seq., and SEC Rule 144.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims stated herein occurred within this judicial district.

## PRELIMINARY STATEMENT

8.     This case arises out of Sun River, through McMillan individually and acting on behalf of Cicerone, wrongfully interfering with the removal of the restrictive legend on a stock certificate evidencing shares of Sun River common stock (the "Sun River Common Stock"), purchased by and registered to Mirador as owner, thereby harming Mirador, intentionally interfering with the free flow of shares Sun River Common Stock into the market, and artificially manipulating the market prices for Sun River Common Stock—all in an effort to increase its market capitalization and enable Sun River and its officers, directors and/or affiliates, including McMillan, to sell Sun River Common Stock at higher prices.

9.     Sun River's interference here is just another instance of its fraudulent pattern of interfering with shareholder rights and the removal of restrictive legends on shares of its stock— a pattern continued with the instant action.  These include *Sun River Energy, Inc. v. Nelson, et al.*, No. 1:11-cv-00198-MSK-MEH (D. Colo.) (seeking to restrain removal of restrictive legend on shares obtained pursuant to consulting contract with Coral Capital Partners); *Sun River Energy, Inc. v. Nova Leasing, LLC, et al.*, Cause No. 11-02692 (298 Dist. Ct., Dallas County, Texas) (seeking to restrain conversion of restricted shares into street name, shares obtained pursuant to asset purchase agreement(s)); *Nova Leasing, LLC v. Sun River Energy, Inc., et al.*,

1:11-cv-00689-CMA-BNB (D. Colo.) (same dispute); and *Sun River Energy, Inc., et al., Spencer Edwards, Inc.*, Cause No. CC-10-01676-E (County Ct. At Law No. 5 Dallas County, Tex.) (seeking damages from broker-dealer for allowing sales of stock owned by LPC Investments whose restrictive legends were allegedly wrongly lifted).

10.     Mirador acquired its 100,000 shares of Sun River Common Stock (the "Mirador Shares") by purchasing them in accordance with a consulting agreement dated August 5, 2010 entered into by Mirador and Sun River, pursuant to which Mirador agreed to act as consultant for Sun River (the "Agreement").

11.     Under the terms of the Agreement, Mirador agreed to use its best efforts to identify business opportunities for Sun River.

12.     Mirador provided Sun River with numerous introductions, including Aspenwood Capital ("Aspenwood"), a full-service investment bank, and Seaside 88, LP ("Seaside 88").

13.     Mirador's introductions, including those of Aspenwood and Seaside 88, resulted in multiple significant business opportunities for Sun River.

14.     The Agreement provided for Sun River to pay Mirador a monthly consultancy fee of $2,000 during its term.

15.     Sun River paid Mirador all of the monthly fees due during the term of the Agreement, indicating its satisfaction with Mirador's services.

16.     The restrictive legend imposed by the Securities Act of 1933, as amended (the "Securities Act") on the Mirador Shares became eligible for removal on February 6, 2011 pursuant to the Securities Act and Rule 144 promulgated thereunder ("Rule 144") by the Securities and Exchange Commission (the "SEC"), and Mirador has satisfied all preconditions

for removal of the restrictive legend on the Mirador Shares and has requested the cooperation of Sun River in achieving such removal.

17.     On April 15, 2011, as revealed in a later Schedule 13D/A filed with the SEC, one of Sun River's largest shareholders, Richard L. Toupal ("Toupal"), holding 6.76% of the Sun River Common Stock, died suddenly.

18.     Four days later, on April 19, 2011, Sun River wrote to its transfer agent, nominal defendant Securities Transfer Corporation ("STC"), objecting to the removal of the restrictive legend from the Mirador Shares pursuant to Rule 144, causing direct financial harm to Mirador and willfully interfering with Mirador's shareholder rights.

19.     This interference – which took place nine months after the date of the Agreement and three months after its termination – was the first time Sun River objected in any way about Mirador's performance under the Agreement.

20.     On May 13, 2011, at Sun River's request, Mirador, represented by Brian John, met with Sun River's CEO and President, Donal R. Schmidt, Jr. ("Schmidt"), and three members of Sun River's Board of Directors in Ft. Lauderdale.   At the May 13th meeting, Schmidt expressed frustration at McMillan, stating that there was enough litigation because of McMillan. Schmidt further stated that he "would clear your (Mirador's) entire certificate if you agreed to a lock up leak out agreement" whereby he would allow Mirador to sell 250 of Mirador Shares per day until Sun River obtains approval of its currently pending Nasdaq listing.  After the Nasdaq listing he would allow Mirador to sell 500 Mirador Shares per day.

21.     On May 18, 2011, Jim Pennington, Sun River's counsel, negotiated the terms of the lock-up leak-out agreement with Mirador's Florida law firm, Sallah & Cox LLC.

22.     Significantly, a Nasdaq listing requires that in order for an issuer to become listed, the bid price of its common stock must be no less than $4.00 when listing.

23.     In the meantime, the estate of Toupal began selling Sun River Common Stock, totaling 48,000 shares over the period May 11-20, 2011.  Suddenly, on May 23, 2011, the estate repurchased the same number of shares, 48,000, of Sun River Common Stock at approximately the same price they had been sold at just weeks earlier.  Upon information and belief, this repurchase was at the instigation of McMillan.

24.     As a result of Sun River's interference caused by its April 19 letter to STC, STC issued a letter that same day giving notice under Article 8 of the Uniform Commercial Code that STC would be required to transfer the Mirador Shares unless Sun River either obtained an injunction or filed with STC an indemnity bond sufficient in STC's judgment to protect STC from any loss it may suffer by refusing to register the transfer by no later than May 18, 2011.

25.     On the last day of that period, May 18, 2011, Sun River brought an action in Texas state court and obtained an *ex parte* temporary restraining order ("TRO") enjoining the removal of the restrictive legend and transfer of shares.

26.     According to Sun River, the basis for its *ex parte* application is that Mirador was required to be licensed and registered as a broker and broker-dealer and that Mirador failed to perform all of the services required under the Agreement.

27.     On May 27, 2011, prior to the hearing on the TRO, Mirador removed this action to this federal court.

28.     By virtue of Rule 680 of the Texas Rules of Civil Procedure, the TRO expired 14 days later, on June 1, 2011 – an expiration deadline that carries over to this federal case upon

removal under the doctrine of *Granny Goose, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974).

29.     As a result, for Sun River's failure to allow removal of the restrictive legend on Mirador's Shares, Mirador is now forced to assert counterclaims for (i) declaratory judgment, (ii) preliminary and permanent injunction, (iii) breach of contract and (iv) tortious interference with contract.

## FACTUAL BACKGROUND

### I.     The Agreements and Stated Compensation

30.     Pursuant to the terms of the Agreement, Sun River retained Mirador for certain consulting services, including using its best efforts to introduce Sun River to various securities dealers, investment advisors, analysts, funding sources and other members of the financial community with which Mirador has established relationships and generally assisting Sun River in its efforts to enhance its visibility in the financial community for a term of six months, subject to specified termination and renewals.

31.     The Agreement provided that Mirador shall purchase, for an aggregate purchase price of $200.00, and Sun River shall issue, the 100,000 Mirador Shares. The Mirador Shares would upon their issuance be fully-paid and non-assessable. The Mirador Shares would bear the restrictive legend imposed by the Securities Act (Agreement at pg. 2).

32.     The Agreement provided that Sun River could terminate the Agreement, with or without cause, by providing 30 days written notification to Mirador and that the Agreement would terminate 30 days following the date of receipt of the written notification by Mirador. The Agreement provided further that notwithstanding termination, "[Mirador] shall be entitled to keep any and all fees, Company stock or other compensation it received from the Company

under the Agreement prior to the date of such notice" (Agreement at 7).  The Agreement also included a Severability Clause (Agreement at 6).

## II.   Introductions to Members of the Financial Community and Resulting Funding

33.    Following the parties' execution of the Agreement, Mirador complied with all of its obligations under the Agreement to provide consulting services on a best efforts basis, in that Mirador representatives traveled to various locations, attended numerous meetings, and formally introduced Sun River to various sources that may have an interest in providing funding or other business opportunities to Sun River.  Among other things, Mirador:

(a)    met with Sun River management on numerous occasions, discussed the needs of Sun River and addressed its plan of operation;

(b)    introduced Sun River to broker/dealers registered under Section 15 of the Securities Exchange Act of 1934, as amended, and members of FINRA who, thereafter, participated in Sun River's convertible preferred stock offering;

(c)    introduced Sun River to numerous securities broker/dealers in New York City and South Florida, thereby giving Sun River exposure to the financial community;

(d)    referred Sun River to numerous potential funding sources; and

(e)    provided business consultation to Sun River management regarding the direction and development of Sun River's business on a regular basis.

(f)    Mirador also introduced Sun River to Aspenwood Capital, leading directly to various successful financing transactions.

III.   **Sun River's Improper Failure To Remove Restrictive Legend and Market Manipulation**

34.   Despite Mirador's having faithfully provided its best efforts to secure introductions for Sun River through its contacts, Sun River now seeks to renege on allowing Mirador the benefit of the bargain and the benefit of the Mirador Shares, which are registered to Mirador on the books of Sun River, as maintained by STC as Sun River's transfer agent.

A.   **The Agreement: Terms of Mirador Shares**

35.   The Agreement allowed Mirador to purchase, and Sun River was required to issue and deliver to Mirador, the 100,000 Mirador Shares which when issued would be fully-paid and non-assessable, but encumbered by the restrictive legend imposed by the Securities Act, for a purchase price of $.002 per share equaling a total of $200 (Agreement at 2-3).

36.   Under the terms of the Agreement, Sun River agreed that it would cause its legal counsel to provide to Mirador and Sun River's transfer agent, STC, an opinion letter allowing the permissible sale of the restricted shares paid for by Mirador pursuant to Rule 144.

37.   No party to the Agreement purported to terminate the Agreement during its term, and it expired by its terms on February 6, 2011.

B.   **Mirador's Purchase and Sun River's Improper Failure to Remove Share Restrictions**

38.   Mirador purchased the 100,000 Mirador Shares (certificate #868) on or about August 5, 2010.  Mirador was entitled to have the restrictive legend removed pursuant to Rule 144 on or about February 6, 2011.

39.   By letter dated April 1, 2011, Mirador's counsel provided STC with a valid legal opinion regarding the permissibility of removal of the restrictive legend pursuant to Rule 144 as to the Mirador Shares.

40.     On April 14, 2011, Mirador provided to Sun River's corporate counsel, James E. Pennington, Esq., Rule 144 paperwork as to the Mirador Shares and made a formal demand, pursuant to the Agreement, for an additional Rule 144 opinion letter as to the Mirador Shares.

41.     Pursuant to the terms of the Agreement (Agreement at 3), Sun River's counsel was required to issue the Rule 144 opinion letter as to the Mirador Shares no later than five business days later, *i.e.*, April 21, 2011.

42.     On or about April 19, 2011 – more than two months after the Mirador Shares became eligible to have the restrictive legend removed – Sun River, without prior notice to Mirador and in clear breach of the Agreement, instructed its transfer agent STC that a "stop order" should be issued with regard to the Mirador Shares, thereby preventing Mirador from lawfully selling them under Rule 144.

43.     That same day, on April 19, 2011, STC sent a letter addressed to Sun River, addressed to its corporate counsel, James E. Pennington, Esq., confirming that Sun River had demanded that STC not process this transfer on the Mirador Shares.  The letter further stated: "Due to this dispute between Sun River Energy, Inc. and Mirador Consulting (Corporate Consultants) presentation of these shares and the company's request not to transfer these shares an adverse claim situation has resulted." The letter further noted that under the UCC, Sun River had until May 18, 2011 to obtain an injunction or post an adequate undertaking, or STC would have no choice but to lift the restrictive legend.

44.     While Sun River did obtain a TRO in state court on May 18, 2011, that TRO expired by operation of law on June 1, 2011.  Sun River has failed to seek to extend the restraint, understandably, as it would never be able to obtain such relief.

45.     Oddly, despite that there has been no restraint in place since June 1, 2011 against the removal of the restrictive legend on the Mirador Shares or against the transference of the Mirador Shares to Mirador free and clear of any restrictive legend, STC has not complied with its statutory duty to provide Mirador with its unrestricted shares.

46.     STC came to replace Sun River's previous transfer agent, Mountain Share Transfer ("Mountain"), on or about February 21, 2011, under suspicious circumstances, after Sun River attempted to interfere with Nova Leasing, LLC ("Nova") from having its Sun River stock certificates converted to street name so that individual shares could be sold and/or transferred.

47.     When Mountain notified Sun River on January 28, 2011 that Nova had requested the transfer, Sun River on January 31, 2011 demanded that Mountain not register a transfer of the shares, and instructed Mountain to place a stop/hold on them, and then replaced Mountain with STC, which, upon information and belief, has wrongfully refused to comply with Nova's instructions for its shares.

**C.     Sun River, Through McMillan, Has Pattern of Dishonoring Its Contractual Obligations and Wrongfully Interfering With the Removal of Restrictive Legends**

48.     Upon information and belief, Sun River's interference with Mirador's right to remove the restrictive legend on the Mirador Shares is part of Sun River's willful, intentional and ongoing conduct, in violation of the securities laws, to artificially manipulate the market price for its stock in order to increase its market capitalization and to enable Sun River to raise severely needed capital, sell its stock at higher prices and enrich its officers, directors and/or affiliates.

49.     Sun River's actions here parallel its interference with Nova's shares, as reflected above, whereby Sun River attempted to strong-arm Nova into a lock-up leak-out agreement and interfered with Nova's requests to have its Sun River stock certificates converted to street name.

That dispute has spawned two separate lawsuits, as reflected in Sun River's Form 10-K filed on June 22, 2011.

50.     Further delineating the illegal actions taken by Sun River and its principals to keep enriching themselves is the Form 10-Q filed with the SEC on September 20, 2010 (the "September 10-Q") which, upon information and belief, contained numerous material misstatements and omissions of material facts in order to mask further violations of the federal securities laws, the disclosure of which could have had a materially adverse effect on the market price of Sun River's stock.

51.     According to the September 10-Q, Sun River was involved in litigation(s) specifically pertaining to, among other things, Sun River's attempt to dominate and control the public market for its common stock by attempting to question the legitimacy of shares previously purchased by investors and to take steps to prevent Sun River's Transfer Agent from removing restrictive legend(s).  In that September 10-Q, it is revealed that "[o]n September 24, 2009, LPC Investments filed suit in the District Court of Jefferson County, Colorado against the Company. Among other things, the suit asks the Court to issue a declaratory judgment in requesting that 2.2 million shares previously purchased by LPC Investments (the Disputed Shares) are indeed owned by LPC Investments, and to direct the Company to co-operate with LPC Investment's outstanding legend removal requests submitted to the Company's transfer agent by LPC Investments."  According to the Form 10-Q filed by Sun River with the SEC on December 20, 2010 (the "December 10-Q"), the above-referenced litigation between LPC Investments and Sun River was settled pursuant to a Confidential Settlement Agreement entered into on June 23, 2010 and dismissed with prejudice pursuant to this settlement agreement on September 27, 2010.

52.   According to the December 10-Q, specifically the section thereof entitled *Spencer Edwards Litigation*: "On March 10, 2010, the Company filed an Original Petition and Application for Temporary Injunction and Permanent Injunctive Relief in the County Court of Dallas County, Texas. The case is styled: *Sun River Energy, Inc., JH Brech, and Richard L. Toupal v. Spencer Edwards, Inc.*, Cause No. cc-10—1676-E, in the County Court at Law # 5, Dallas County, Texas.   The suit alleges, among other things, Spencer Edwards, Inc. has repeatedly violated Rule 144 of the U.S. Securities Act of 1933 in the selling of common shares of the Company on the open market which was a basis of the underlying litigation against Kevin Paul in Case No. 2009CV4859 the District Court of Jefferson County, Division 8, Colorado. This case is in the discovery phase. The Company is seeking actual damages and costs and attorney's fees."   Upon information and belief JH Brech, LLC is a company Harry McMillan controls, therefore further demonstrating his actions with the direct involvement of Sun River's officers are designed to control and dominate the trading in Sun River's common stock by preventing anyone other than Harry McMillan or his designees the opportunity to sell their Sun River shares into the public marketplace.

53.   McMillan is not listed or disclosed as an Officer or Director of Sun River. From January through March of 2011, 60,000 of McMillans's shares of Sun River Common Stock, which are beneficially owned through Cicerone Corporate Development LLC, were sold to the public. Such 2011 SEC Filings, however, fail to disclose that McMillan, as a selling shareholder, was dominating and controlling the public market for Sun River's common stock.   Upon information and belief, McMillan is further attempting to mask and conceal his dominant position with Sun River by shielding his holdings as the single largest shareholder of Sun River

common stock holdings through the use of Cicerone Corporate Development LLC and JH Brech LLC.

54.     Cicerone is the vehicle through which McMillan has arranged sweet-heart financial arrangements with Sun River, most notably through Cicerone's "consulting" agreements with Sun River, as reflected in Sun River's most recent Form 10-K, including $408,000 of expense for the year ended April 30, 2011, in addition to warrants.

55.     McMillan, while not named as an executive officer by Sun River in its SEC filings, has acted in an executive officer's official capacity on behalf of Sun River in, among other matters, Sun River's dealings with Mirador.  In fact, it was McMillan who actively solicited Mirador's consulting services for Sun River.  From that point forward McMillan, together with Sun River's President/CEO Schmidt, remained Sun River's primary contact people for Mirador.

56.     McMillan's "executive officer's official capacity" with Sun River is reinforced by his own words and his signature on a March 21, 2011 letter to Mirador acknowledging that Mirador introduced Sun River to Eastgate Securities.  In a September 15, 2010 email from Aegis Securities to Axiom Capital and McMillan which subject header states "Sun River," McMillan, among other things, demonstrated his power to negotiate on behalf of Sun River, to arrange for investment bankers, market makers, and influence business decisions made by Sun River, by involving himself in and lead the sales of Sun River securities, making reference to Sun River by the words "we" and "us," and thereby, clearly functioned as an executive officer of Sun River. According to McMillan's email dated March 31, 2011, McMillan stated "slow down let me get through k filings" in reference to Sun River.

57.     Even more disconcerting is the fact that McMillan, on or about the year 1999, was named in a lawsuit (*Sovereign Partners Limited Partnership v. Worst*) involving the manipulation of a penny stock, including placing strategic bids to move a stock higher and prop up the price.

58.     By his affiliation with Sun River in its various penny stock offerings, McMillan has not only been acting on behalf of Sun River in direct violation of SEC Rules and in contravention of federal law, but has been engaging in the similar types of illegal activities, including his participation in previous penny stock offerings.

59.     At no time until very recently, when counsel were involved on an adversarial basis, did Sun River ever claim that Mirador failed to pay the $200 for the Mirador Shares due under the Agreement.   But Mirador provided Sun River a $200 check, which Sun River has failed to negotiate.   At all relevant times, Mirador has stood ready to pay or credit Sun River the $200.

## D.     McMillan's Acts Have Been Undertaken To Influence Market Prices for Self-Gain

60.     Upon information and belief, these actions of Sun River, taken through McMillan, have been designed to, and have, limited the amount of shares that can be legally sold in the public market, and thus have illegally and artificially controlled and manipulated the market price of Sun River stock.   By its conduct, Sun River has made it easier for its officers and directors to enrich themselves by selling Sun River shares that they or their affiliates (*e.g.*, Cicerone) own.

61.     Sun River, through McMillan, has been attempting to keep its stock price above $4.00 so as to maintain eligibility for Nasdaq listing.

62.    According to SEC filings, commencing on or about November 16, 2010 and continuing through March 11, 2011, Sun River has raised money through the issuance of $9,000,0000 in its shares of the 8% Series A Cumulative Convertible Preferred Stock (the "Preferred Shares").  Sun River has the right to force conversion of the Preferred Shares if the shares of Sun River Common Stock trade above $4.00 for forty-five consecutive trading days. On or about April 25, 2011, Sun River effectuated the conversion of 443,850 Preferred Shares into 4,438,500 shares of Sun River Common Stock, which it may not have been able to do had it agreed to Mirador's sale of the Mirador Shares in that the market price of the Sun River Common Stock may not have traded above $4.00 for any forty-five consecutive trading days.

63.    In addition, Sun River has been issuing shares and options to purchase additional Sun River shares to its Officers and Directors.

64.    Sun River is preventing Mirador from selling the Mirador Shares in order to limit the number of freely tradable shares of Sun River Common Stock in the open market and hence impede the liquidity of trading in such shares.  If effected, the sale by Mirador of its Mirador Shares may depress the market price of the Sun River Common Stock which could in turn restrict Sun River's ability to convert more Preferred Shares.  In addition, any reduction in the market price of the Sun River Common Stock would reduce the market value of, as well as demand for, the Sun River Common Stock held by Sun River's officers, directors and other affiliates, including McMillan.

### E.    Sun River Has a History of Deficient SEC Filings and Not Adhering To Corporate Formalities

65.    Sun River's references to its Preferred Shares in its Form 10-Q for the period ended January 31, 2011, is inconsistent.  The balance sheet references 95,250 Preferred Shares issued and outstanding as of January 31, 2011.  Note 6 states that there were 103,950 Preferred

Shares issued and outstanding as of January 31, 2011 and that 8,700 Preferred Shares were converted into Sun River Common Stock, but not when. Item 2 under Part II of the Form 10-Q clearly shows that a total of 245,200 Preferred Shares were redeemed, but no reference is made as to what happened with the remaining 141,250 Preferred Shares. This Item 2 is incomplete and does not, as required, furnish all the information required by Item 701 of Reg S-K. For example, some of the dollar amounts received indicate that commissions were paid; if so, disclosure to such effect should have been made.

66.     According to Sun River's Form 10-Q for the period ended January 31, 2011, Sun River issued Preferred Shares commencing November 16, 2010, but its Certificate of Designation was not filed with the State of Colorado, as would have been required prior to issuance, until December 23, 2010.

## FIRST CLAIM FOR RELIEF

### (AGAINST SUN RIVER – DECLARATORY JUDGMENT)

67.     Mirador repeats and realleges the allegations contained above as if set forth in full herein.

68.     Mirador entered into the Agreement with Sun River whereby Mirador purchased the 100,000 Mirador Shares

69.     Sun River delivered the Mirador Shares.

70.     The legend restricting transfer of the Mirador Shares became eligible for removal on or about February 6, 2011 under Rule 144.

71.     Mirador and its agents satisfied all of the preconditions under the Agreement for removal of the restrictive legend on such Mirador Shares and the legend should have been removed on or about February 6, 2011.

72.     Despite Mirador's urging, and Sun River's contractual obligation, Sun River refused to issue an opinion letter pursuant to Rule 144 permitting the removal of restrictions on transfer of the Mirador Shares.

73.     By reason of the foregoing, in addition to other relief, Plaintiff is entitled to a declaratory judgment against Sun River declaring that the restrictive legend on the Mirador Shares is immediately to be removed; was entitled to be removed on and since February 6, 2011, April 19, 2011, and no later than June 1, 2011.

## SECOND CLAIM FOR RELIEF

### (AGAINST SUN RIVER – INJUNCTIVE RELIEF)

74.     Mirador repeats and realleges the allegations contained above as if set forth in full herein.

75.     Mirador is entitled to injunctive relief against Sun River and its agents, enjoining them from interfering with the removal and the restrictive legend on the Mirador Shares and from interfering with Mirador's shareholder rights in the Mirador Shares.

## THIRD CLAIM FOR RELIEF

### (AGAINST SUN RIVER – BREACH OF CONTRACT FOR PREVENTING REMOVAL OF RESTRICTIVE LEGEND)

76.     Mirador repeats and realleges the allegations contained above as if set forth in full herein.

77.     The Agreement requires Sun River to deliver the Mirador Shares to Mirador and to lift the restrictive legend on the Mirador shares.

78.     Mirador performed its obligations under the Agreement.

79.     Sun River has refused to have the Mirador Shares delivered to Mirador or to have the restrictive legends removed.

80.     Mirador has been financially harmed by Sun River's failure to deliver such shares as the closing price for such shares was $5.08 per share on April 1, 2011, as reported by the Nasdaq Stock Market.

81.     By reason of the foregoing, in addition to other relief, Plaintiff is entitled to judgment against Sun River on the Agreement in the amount to be determined, plus statutory interest and attorney's fees.

## FOURTH CLAIM FOR RELIEF

### (AGAINST MCMILLAN & CICERONE – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT)

82.     Mirador repeats and realleges the allegations contained above as if set forth in full herein.

83.     Mirador had an existing contract with Sun River.

84.     McMillan (individually and on behalf of Cicerone) was aware of the Agreement between Mirador and Sun River.

85.     By his conduct, McMillan (individually and on behalf of Cicerone) willfully and intentionally interfered with Sun River's performance under the Agreement and Sun River's commitments thereunder.

86.     The interference by McMillan (individually and on behalf of Cicerone) was unprivileged.

87.     By his conduct, McMillan (individually and on behalf of Cicerone) has acted with intentional and reckless, willful and wanton disregard of Mirador's rights, and have intentionally and maliciously interfered with Mirador's contractual relationship with Sun River.

88.     But for the interference by McMillan (individually and on behalf of Cicerone), Sun River's commitments to Mirador would have been honored.

89.  McMillan (individually and on behalf of Cicerone) has intentionally prevented Sun River from consenting to the issuance of an opinion letter permitting the removal of the restrictive legend from the certificate evidencing the Mirador Shares pursuant to Rule 144 in order to limit the number of shares of freely tradable of Sun River Common Stock, an action undertaken by McMillan with a view to artificially influence market prices for his and Cicerone's financial gain.

90.  McMillan has been causing Cicerone, through which he beneficially owns shares of Sun River Common Stock, to actively sell such shares.

91.  By reason of the foregoing, in addition to other relief, Mirador is entitled to judgment against McMillan and Cicernone for compensatory damages in an amount to be determined, plus statutory interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that a judgment be entered against the Defendants, in the alternative as indicated above, as follows:

92.  on the First Claim for relief, a declaratory judgment against Sun River declaring that the restrictive legend on the Mirador Shares is immediately to be removed; was entitled to be removed on and since February 6, 2011, April 19, 2011, and no later than June 1, 2011;

93.  on the Second Claim for relief, a preliminary and permanent injunction enjoining Sun River and its agents from interfering with the removal and the restrictive legend on the Mirador Shares and from interfering with Mirador's shareholder rights in the Mirador Shares and requiring Sun River to assist Mirador in removing the restrictive legend on the Mirador Shares and transferring them to Mirador.

94.     on the Third Claim for relief, against Sun River for failing to remove the restrictive legend on 100,000 shares of Sun River stock, awarding Plaintiff compensatory damages against Sun River in an amount to be determined as well as reasonable and necessary attorneys' fees incurred in the prosecution the counterclaim for breach of contract;

95.     on the Fourth Claim for relief, against McMillan and Cicerone, for tortious interference with contract, awarding Plaintiff compensatory and punitive damages in an amount to be determined;

96.     awarding Plaintiff such interest as allowed by law;

97.     awarding Plaintiff its costs, expenses and disbursements;

98.     awarding Plaintiff the costs of its legal fees; and

99.     granting such other and further relief as is deemed reasonable and equitable.

## ANSWER TO AMENDED ORIGINAL PETITION

Mirador, for its Answer to Plaintiff's Amended Original Petition and Request for Injunctive Relief, states as follows:

## DISCOVERY LEVEL

1.     Denies the allegations of paragraph 1 of the Amended Petition.

## SUMMARY

2.     Denies all of the allegations of paragraph 2 of the Amended Petition, except admits that a temporary restraining order was entered on May 18, 2011; that as part of its compensation under the contract, Mirador received 100,000 shares of Sun River Energy, Inc.'s ("Sun River") restricted common stock that Mirador purchased; that Mirador recently requested that Securities Transfer Corporation ("STC") register a transfer of Sun River shares and lift the

restrictive legend from the shares; and admits the last sentence of paragraph 2 of the Amended Petition, but not the entitlement to the relief requested therein.

## PARTIES

3.      Admits the allegations of paragraph 3 of the Amended Petition.

4.      Admits that Mirador is a Florida corporation with its offices at 5499 N. Federal Hwy, Suite D, Boca Raton, Florida 44387. Denies knowledge or information sufficient to form a belief as to the truth of the allegations for the remaining allegations contained in paragraph 4 of the Amended Petition.

5.      Admits the allegations of paragraph 5 of the Amended Petition.

## JURISDICTION AND VENUE

6.      Denies the allegations contained in paragraph 6 of the Amended Petition, except admits that the relief sought by Sun River was within the jurisdictional limits of the state court. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 6 of the Amended Petition.

7.      Denies the allegations of paragraph 7 of the Amended Petition.

## FACTUAL ALLEGATIONS

8.      Admits the allegations of paragraph 8 of the Amended Petition, but denies the allegations in the Affidavit of McMillan.

9.      Admits the allegations contained in the first sentence of paragraph 9 of the Amended Petition. Denies the allegations contained in the second sentence of paragraph 10, except admits that Mirador agreed to use its best efforts to introduce Sun River to various securities dealers, funding sources, and other members of the financial community with whom Mirador had established relationships.

10.     Denies the allegations of paragraph 10 of the Amended Petition and refers to the agreement for the content thereof.

11.     Denies the allegations of paragraph 11 of the Amended Petition, except admits that as compensation for its services, Mirador was to receive the 100,000 Mirador Shares in consideration for the payment of $200.00.

12.     Denies the allegations contained in the first sentence of paragraph 12 of the Amended Petition, and admits the allegation contained in the second sentence of paragraph 12.

13.     Admits the allegations of paragraph 13 of the Amended Petition.

14.     Denies the allegations of paragraph 14 of the Amended Petition.

15.     Denies the allegations of paragraph 15 of the Amended Petition.

16.     Denies the allegations of paragraph 16 of the Amended Petition.

17.     Admits the allegations of paragraph 17 of the Amended Petition.

18.     Denies the allegations contained in paragraph 18 of the Amended Petition, except admits that on April 19, 2011, Sun River refused Defendant's request for a removal of the restrictive legend on certificate number 868 evidencing the Mirador Shares and notified STC, the transfer agent, not to register any transfer of the aforementioned shares, and admits that Exhibit 2 is a true and correct copy of the notice.

19.     Admits the allegations of paragraph 19 of the Amended Petition, except that it denies that the lack of an injunction will deprive Sun River of the shares or harm the market.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (NO DUTY TO REGISTER TRANSFER OF SHARES PURSUANT TO TEX. BUS. & COM. CODE § 8.401)

20.    For its answer to paragraph 20 of the Amended Petition, repeats and re-alleges its responses to paragraphs 1 through 19 of the Amended Petition as though fully set forth herein.

21.    Denies the allegations of paragraph 21 of the Amended Petition and refers to section 8.401 for the content thereof.

22.    Denies the allegations of paragraph 22 of the Amended Petition.

23.    Admits the allegations of paragraph 23 of the Amended Petition.

24.    Denies the allegations of paragraph 24 of the Amended Petition.

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT PURSUANT TO TEX. CIV. PRAC. & REM. CODE CHAPTER 37)

25.    For its answer to paragraph 25 of the Amended Petition, repeats and re-alleges its responses to paragraphs 1 through 24 of the Amended Petition as though fully set forth herein.

26.    Denies the allegations of paragraph 26 of the Amended Petition, except admits that a real controversy exists between Sun River and Mirador; and that Mirador is asserting that Sun River should remove the restrictive legend from the Sun River shares and/or register transfer of the shares; and admits the allegations of part c of paragraph 26 of the Amended Petition.

27.    Denies the allegations of paragraph 27 of the Amended Petition.

28.    Denies the allegations of paragraph 28 of the Amended Petition.

### THIRD CLAIM FOR RELIEF

#### (FRAUDULENT INDUCEMENT)

29.     For its answer to paragraph 29 of the Amended Petition, repeats and re-alleges its responses to paragraphs 1 through 28 of the Amended Petition as though fully set forth herein.

30.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.     Denies the allegations of paragraph 31 of the Amended Petition, except admits that such representations included that Mirador had the requisite industry contacts and consulting ability to fulfill its duties under the Agreement.

32.     Denies the allegations of paragraph 32 of the Amended Petition.

### APPLICATION FOR INJUNCTIVE RELIEF

33.     For its answer to paragraph 33 of the Amended Petition, repeats and re-alleges its responses to paragraphs 1 through 32 of the Amended Petition as though fully set forth herein.

34.     Denies the allegations of paragraph 34 of the Amended Petition.

35.     Denies the allegations of paragraph 35 of the Amended Petition, except admits that Mirador requested the removal of the restrictive legends contained on the certificates of Sun River stock currently held by it, and/or that a transfer or transfers of shares be permitted.

36.     Denies the allegations of paragraph 36 of the Amended Petition, except admits the first two sentences of paragraph 36.

37.     Denies the allegations of paragraph 37 of the Amended Petition, except admits that Sun River is a public company.

38.     Denies the allegations in the first sentence of paragraph 38 of the Amended Petition or that any transfer would be "harmful" and otherwise admits the allegations of paragraph 38 of the Amended Petition.

39.     Denies the allegations contained in paragraph 39 of the Amended Petition.

## FIRST AFFIRMATIVE DEFENSE

40.     Plaintiff has failed to state facts sufficient to constitute a claim for relief against Mirador.

## SECOND AFFIRMATIVE DEFENSE

41.     Plaintiff's claim and relief sought, or part thereof, is moot, as plaintiff has failed to take sufficient steps to maintain any restraints against the removal of the restrictive legends contained on the certificates of Sun River stock currently held by Mirador, and/or against the transfer of shares.

## THIRD AFFIRMATIVE DEFENSE

42.     The action and relief sought is barred by the doctrines of waiver, estoppel and unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

43.     The action and relief sought is barred by the doctrine of laches.

WHEREFORE, Defendant Mirador Consulting, Inc. requests that the Court deny any interim or permanent relief sought by Plaintiff Sun River Energy, Inc. and enter judgment in Defendant's favor and against Plaintiff.

Dated:      July 7, 2011
            Dallas, Texas

                              Respectfully submitted,


                    By:     _Paul C. Watler_____
                              Robert P. Latham
                              State Bar No. 11975500
                              Paul C. Watler
                              State Bar No. 20931600
                              H. Colin LeCroy
                              State Bar No. 24070120
                              JACKSON WALKER L.L.P.
                              901 Main Street, Suite 6000
                              Dallas, Texas 75202
                              Telephone:  (214) 953-6095
                              Facsimile:  (214) 661-6663

                              **ATTORNEYS IN CHARGE FOR MIRADOR
                              CONSULTING, INC.**

                              Of counsel:
                              Martin H. Kaplan, Esq.
                              Robert L. Herskovits, Esq.
                              Brian D. Graifman, Esq.
                              GUSRAE, KAPLAN, BRUNO & NUSBAUM
                              PLLC
                              120 Wall Street
                              New York, New York 10005
                              Telephone:  (212) 269-1400
                              Facsimile:  (212) 805-5449

---

## CERTIFICATE OF SERVICE

This is to certify that on the 7th day of July, 2011, a true and correct copy of the foregoing document was served via the court electronic filing system:

David R. Clouston
Sessions Fishman Nathan & Israel LLC
900 Jackson Street, Suite 440
Dallas, TX 75202
dclouston@sessions-law.biz

Jack M. Kuykendall
Law Offices of Jack M. Kuykendall
5001 Spring Valley Road, Suite 400 East
Dallas, TX 75244
jmkesq@integrity.com


_____
Paul C. Watler